
FILED
JUN - 6 2016
Clerk, U.S. District Court
District Of Montana
Billings

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. FRANK WAYNE REINKE, Defendant. | CR 15-31-BLG-SPW ORDER |

This matter comes before the Court on the Findings and Recommendation of United States Magistrate Judge Carolyn Ostby. (Doc. 75). Defendant Frank Wayne Reinke filed a Motion to Suppress on March 14, 2016. (Doc. 61). Reinke seeks to suppress evidence recovered as a result of a traffic stop and subsequent warranted search on November 15, 2013, and evidence recovered during a probationary search conducted on November 21, 2014. (*Id.*) There are two firearms at issue in each search. This Court referred the motion to Judge Ostby. (Doc. 68). Judge Ostby held a hearing and heard testimony from Yellowstone County Sheriff's Deputy Robert Lester, Billings Police Department Officers Jared Lausch and Michael Johnson, Montana State Probation and Parole Officers Joshua Zent and Lamar Clark, and Frank Reinke.

1

She entered her Findings and Recommendation on May 5, 2016. (Doc. 75). In the Findings and Recommendation, Judge Ostby recommends that this Court deny Reinke's Motion to Supress. Because Reinke timely objected, (Docs. 77, 78), he is entitled to de novo review of the specified findings and recommendations to which he objects. 28 U.S.C. § 636(b)(1). For the reasons discussed below, this Court adopts Judge Ostby's Findings and Recommendation in full. Because the parties are familiar with the procedural and factual background of this case, it will not be restated here.

## I. Discussion

Reinke sets forth four specific objections. He has three objections related to the November 12, 2013, stop and search of his truck, and one objection to the November 21, 2014, search of his truck. His objections will be addressed in order.

### A. The November 12, 2013 stop and search

#### 1. Magistrate Judge Ostby's findings of fact

Reinke first objects to Judge Ostby's findings of fact, which he contends rely on Deputy Lester's unsworn report instead of his sworn testimony. (Doc. 78 at 2). Ordinarily, police reports are inadmissible in criminal actions to prove the facts stated therein. Fed. R. Ev. 803(8). However, Reinke attached Lester's police report to his suppression motion and relied upon it as the facts upon which the

2

suppression motion should be made. (*See* Doc. 62, Ex. 1). Accordingly, his objection to Judge Ostby relying on the same facts is without merit. Further, while Deputy Lester's report included some details not discussed at the hearing, a side-by-side comparison of Deputy Lester's unsworn report to his hearing testimony reveal no factual discrepancies. Reinke's objection is overruled.

## 2. Whether reasonable suspicion existed to stop Reinke

Next, Reinke argues that Judge Ostby erred in finding that Deputy Lester had reasonable suspicion to stop Reinke. Specifically, Reinke argues that Deputy Lester's dash cam proves that Reinke did not drive in two lanes of traffic. With respect to this fact, Judge Ostby determined that the dash cam video was inconclusive.

After watching the video, this Court agrees with Judge Ostby. It is impossible to tell from the video whether Reinke drove into the adjoining lane of traffic when he negotiated the turn at the intersection of 87 East and Main Street. Deputy Lester testified that he remembered seeing Reinke drive down the middle of the two lanes after the turn, which is what prompted him to pull out of his parking spot to follow Reinke. (Doc. 79 at 6:8-17). The Court finds this testimony credible. First, it makes practical sense that a law violation would prompt Deputy Lester to leave his parking spot. Second, Deputy Lester's comments in the video

3

corroborate his hearing testimony. After Deputy Lester left his parking spot and began following Reinke, Deputy Lester stated that he saw Reinke "driving down the middle of the road" at the turn. (Gov. Ex. 5, 1:15:17).

Considering the totality of the circumstances, including Deputy Lester's testimony about Reinke driving in two lanes, Judge Ostby found that Deputy Lester had reasonable suspicion to stop Reinke. After conducting a de novo review of the evidence, this Court agrees with Judge Ostby. Deputy Lester observed Reinke drive in two lanes, noticed Reinke's truck touch the fog line, and noticed Reinke was driving ten miles under the posted speed limit. While the Court cannot see from the video whether Reinke drove down the middle of two lanes, the video corroborates the other factors upon which Deputy Lester relied. The video shows Reinke drive on the fog line (*id.* at 1:51:41), and Deputy Lester reports in the video that Reinke was driving ten miles per hour under the speed limit, (*id.* at 1:51:48), a fact to which Reinke later admits. (*Id.* at 2:11:28).

At the moment Reinke crossed two lanes of traffic, Deputy Lester had a "particularized and objective basis" for suspecting legal wrongdoing when Reinke drove in two lanes in violation of Montana law, *United States v. Arvizu*, 534 U.S. 266, 273 (2002), and the events after that point – driving on the fog line and under the speed limit – only contributed to that suspicion. Judge Ostby correctly

4

determined that Lester possessed reasonable suspicion to stop Reinke for possible DUI.

### 3. Whether the stop was unreasonably prolonged to conduct a K-9 sniff

Reinke contends that Judge Ostby erred in determining that Deputy Lester had reasonable suspicion to prolong the stop, which ultimately resulted in a K-9 sniff. A seizure that begins lawfully may violate the Fourth Amendment "if its manner or execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). An initially legal traffic stop may become illegal if inquiries into matters unrelated to the justification for the stop unreasonably prolong it. *United States v. Turvin*, 517 F.3d 1097, 1103–04 (9th Cir. 2008). However, as long as the stop is not unreasonably extended, officers may ask questions unrelated to the purpose of the stop, even without reasonable suspicion for the questions. *United States v. Mendez*, 476 F.3d 1077, 1081 (9th Cir. 2007). "The tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop, and attend to related safety concerns." *Rodriguez v. United States*, —— U.S. ——, 135 S.Ct. 1609, 1614 (2015).

Reinke raises the fact that his brake light was not out and could not provide Deputy Lester with a reason for continued detention. (Doc. 78 at 9). But without

considering the broken tail light, Reinke failed to immediately respond to Deputy Lester's attempt to pull him over, and once stopped, Reinke failed to provide a valid driver's license or identification, his eyes were watery and his speech was slow, Reinke's passenger, Heather Brawley, appeared to be very nervous and her hands were trembling, and Deputy Lester saw a liquor bottle in the car at Brawley's feet. All of these factors together justified further detention for DUI investigation by Deputy Lester once Reinke stopped.

Next, when Deputy Lester asked both parties for identification, Brawley reported that she had an outstanding warrant. Reinke argues that Deputy Lester unreasonably prolonged the initial traffic stop by investigating Brawley, when he should have been investigating Reinke for DUI. The Court disagrees. Upon learning that Brawley had an outstanding arrest warrant, removing her from the truck and detaining her in his patrol car was a typical and prudent law enforcement action. *See id.*, 135 S.Ct. at 1616 (recognizing that "an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely," as traffic stops can be "especially fraught with danger to police officers.")

The stop here lasted approximately 20 minutes and concluded with Reinke receiving a ticket and a warning. Prior to issuing the ticket, Deputy Lester noticed Reinke's pupils were permanently constricted, which he associated with narcotics

6

use, and Reinke's speech was slow and his eyes were watery, which increased Deputy Lester's suspicion that Reinke was intoxicated. Deputy Lester ran a background check which alerted him to Reinke's criminal drug history, searched Reinke for weapons, conducted DUI field tests, and asked Reinke about his use and possession of drugs and whether he would consent to a search of the vehicle. Judge Ostby correctly noted that these measures, all of which took approximately sixteen minutes, resulted from Deputy Lester's reasonable suspicion that Reinke was intoxicated and potentially in possession of illegal narcotics. Indeed, Reinke does not challenge the length of time it took to complete these actions. Nor does he challenge Deputy Lester's questioning him or conducting the field tests as "appreciably" extending the duration of the stop. *Turvin*, 517 F.3d at 1102. Reinke only contends that Deputy Lester's time spent with Brawley unreasonably prolonged the search. (Doc. 78 at 14).

At the time Deputy Lester was questioning Brawley in the patrol car, however, he was also running a records search on Reinke, which is when he discovered Reinke had a suspended license and a criminal drug history. (Doc. 79 at 9:24-10:9) This took less than four minutes. (*See* Gov. Ex. 5 at 01:55:52-01:59:20). Deputy Lester did not expand the duration of the stop when he questioned and detained Brawley in the patrol car because the stop would have lasted until after

Deputy Lester completed Reinke's background search, in any event. *See United States v. Mendez*, 476 F.3d 1077, 1080 (9th Cir. 2007) (holding that additional actions taken at the same time as a records check cannot expand the duration of the stop because the stop would have lasted until after the check had been completed). The stop as a whole was reasonable, and Deputy Lester's interaction with Brawley, which added "a minute or so" to the duration of the stop, did not make it otherwise. *See id.* at 1103.

### 4. Whether reasonable suspicion existed for the K-9 sniff

Reinke argues that reasonable suspicion did not exist to conduct the K-9 sniff. But because the stop was not prolonged beyond the time reasonably required for Deputy Lester to conduct his DUI investigation and issue Reinke the ticket in order to perform the dog sniff, reasonable suspicion was not required. *See Illinois v. Caballes*, 543 U.S. 405, 408, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). *See also United States v. Brown*, 222 F. App'x 652, 653 (9th Cir. 2007) ("[T]he time that elapsed from the beginning of the traffic stop to when the K9 ... alerted to the presence of drugs was only 11 or 12 minutes, not 'beyond the time reasonably required' to issue a ticket. The ... police officer was, in good faith, just finishing writing the ticket when the K9 unit arrived, and ... the dog sniff was completed within the next minute or two.").

Assuming reasonable suspicion was required, Judge Ostby correctly determined that it existed to allow the K-9 sniff. Because Deputy Lester had developed reasonable suspicion that Reinke was in possession and under the influence of illegal drugs through Reinke's driving, his criminal history, Deputy Lester's observation of Reinke's pupils and demeanor, and Brawley's behavior and criminal history, he could lawfully prolong the traffic stop in order to allow a K-9 sniff to help verify whether his reasonable suspicion was correct. *Rodriguez*, 135 S. Ct. at 1616. Here, like in *Brown*, Deputy Lester was just finishing writing Reinke a ticket when the K9 sniff occurred. Reinke's objection is overruled.

### B. The November 21, 2014, truck search

Reinke argues that Judge Ostby erred in determining that Officers Clark and Zent had reasonable suspicion to search the truck because no connection existed between the truck and Reinke. Judge Ostby pointed out, however, that when the officers arrived at his residence, Reinke saw and recognized them, padlocked his trailer and fled. These actions were unequivocal violations of his probation terms. Additionally, Judge Ostby noted that running from law enforcement officers may be grounds for reasonable suspicion. *Illinois v. Wardlow*, 528 U.S. 119, 124-125 (2000). In cases like the one at hand, where the defendant recognizes the officers and knows he has a duty to comply, yet flees, the officers possess reasonable

suspicion that criminal activity is afoot. *Id.*

Reinke's argument that he had no connection to the truck is equally unavailing. Officer Clark testified that he had personally seen Reinke drive the truck and that he was made aware by other police officers that they had stopped Reinke in the truck. (Doc. 9 at 109:1-5). To that end, Officer Clark testified that when he and Officer Zent arrived at Reinke's trailer, Reinke was standing next to the truck and trailer, (*id.* at 109:6-14) and the truck door was open. (*Id.* at 111:22-23). Sufficient evidence existed connecting Reinke to the truck. Reinke's objection is overruled.

### C.     Conclusion

For the above reasons, Reinke's objections to Judge Ostby's findings and recommendations are overruled.

Accordingly, IT IS HEREBY ORDERED

1. Judge Ostby's Findings and Recommendations (Doc. 75) are ADOPTED IN FULL.

2. Reinke's Motion to Suppress (Doc. 61) is DENIED.

DATED this 6th day of June 2016.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge